**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-22450-ELFENBEIN

**DAMARIS L. ISCOA**,

Plaintiff,

v.

**FRANK J. BISIGNANO**,

Defendant.
_______________________________________/

# ORDER

**THIS CAUSE** is before the Court on Plaintiff Damaris L. Iscoa's ("Plaintiff") Motion for Summary Judgment, (the "Plaintiff's Motion for Summary Judgment"), ECF No. [10]. Defendant Frank Bisignano, Commissioner of Social Security Administration ("Defendant"), filed a Memorandum in Support of the Commissioner's Decision, which serves as Defendant's Response and Cross-Motion for Summary Judgment ("Defendant's Motion for Summary Judgment"), ECF No. [14].[1] Plaintiff subsequently filed a Reply Motion For Summary Judgment with Supporting Memorandum of Law (the "Reply"), ECF No. [15]. The Parties have not objected to the undersigned's jurisdiction and, therefore, have consented to it. *See* ECF No. [4] at 2 ("If no party objects to Magistrate Judge jurisdiction within this timeframe, then this case will proceed in full

[1] The Court's Order Setting Social Security Case Procedures and Deadlines requires that Defendant "file a response to Plaintiff's motion for summary judgment and a cross-motion for summary judgment" "within 30 days of the date Plaintiff files a motion for summary judgment." *See* ECF No. [4] at 3 (emphasis omitted). Although Defendant titled the document as a memorandum in support of the Commissioner's Decision, the Court assumes Defendant committed a scrivener's error in failing to also title the document as its cross-motion for summary judgment.

before the undersigned Magistrate Judge for all purposes, including entering any dispositive order and final judgment.").

Having reviewed the Parties' filings, the record, and the relevant law, Plaintiff's Motion for Summary Judgment, **ECF No. [10]**, is **GRANTED;** Defendant's Motion for Summary Judgment, **ECF No. [14]**, is **DENIED**, and the Administrative Law Judge's Decision ("ALJ's Decision") is **REMANDED**.

## I. BACKGROUND

On October 4, 2021, Plaintiff simultaneously applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. and for Supplemental Security Income ("SSI") under Title XVI of the Act, alleging disability starting on March 26, 2020, based on allergies, type-2 diabetes, fibromyalgia, high blood pressure, lupus, depression, and cholesterol. *See* ECF No. [7-2] at 16; ECF No. [7-5] at 5, 12; ECF No. [7-6] at 2, 6. The Social Security Administration ("SSA") initially denied Plaintiff's application on July 12, 2022, and again upon reconsideration on November 1, 2023. *See* ECF No. [7-2] at 16. Thereafter, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on May 16, 2024 (the "Hearing"). *See id* at 16, 39-69. The ALJ issued an unfavorable decision on July 11, 2024, finding Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 26, 2020, through the date of this decision." *See id.* at 10, 30-31. The Appeals Council denied Plaintiff's request for review on May 20, 2025, making the ALJ's Decision final. *See id.* at 2-5.

## II. LEGAL STANDARDS

### A. Judicial Review of Claims under the Act

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal

standards in reaching his or her determination. *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019). Moreover, the Court will affirm an ALJ's decision so long as substantial evidence supports it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation marks omitted)).

The standard for substantial evidence requires more than a mere scintilla and necessitates relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more than a scintilla, but less than a preponderance"). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if the evidence leans against the ALJ's decision, the court must uphold it if substantial evidence supports it. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). "The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole." *Raper v. Commr. of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024), *cert. denied sub nom*. 145 S. Ct. 984 (2024) (citing *Dyer*, 395 F.3d at 1210; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987)).

### B. <u>Regulatory Framework for Weighing Medical Opinions</u>

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and

mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace). 20 C.F.R. § 404.1513(a)(2).

When evaluating "medical opinions and prior administrative medical findings," the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's "medical sources," *id.* § 404.1520c(a), but the ALJ "will articulate" "how persuasive" he or she finds "all of the medical opinions and all of the prior administrative medical findings in" the claimant's "case record," *id.* § 404.1520c(b). In doing so, the ALJ primarily considers four factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant[2]; and (4) specialization. *Id.* § 404.1520c(c)(1)–(4); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (Section 404.1520c(c) "provides several factors for determining what weight to give a claimant's proffered medical opinions. Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, [and] the physician's specialty."). The ALJ also considers "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of" the SSA's "disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5); *see also Harner*, 38 F.4th at 897 (noting the ALJ

[2] The relationship with the claimant factor "combines consideration of" the "length of time a medical source has treated" the claimant and the "frequency" of visits, both of which "may help demonstrate whether the medical source has a longitudinal understanding of" the impairments. *See* 20 C.F.R. § 404.1520c(c)(3). This factor also considers the "purpose for treatment" and the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories," both of which "may help demonstrate the level of knowledge the medical source has of" the impairments. *Id.* § 404.1520c(c)(3). Finally, this factor considers whether the medical source has examined the claimant, which may give the medical source "a better understanding of" the impairments "than if the medical source only reviews evidence in" the claimant's "folder." *Id.* § 404.1520c(c)(3).

considers "other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability").

### C. Regulatory Framework for Evaluating Subjective Complaints

Social Security regulations require the ALJ to consider and evaluate all evidence, including from nonmedical sources. 20 C.F.R. § 404.1513(a). This type of evidence includes "any information from a "nonmedical source (including [the claimant]) about any issue in [the claimant's] claim." 20 C.F.R. § 404.1513(a)(4). A claimant can establish existence of a disability through her "own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In that scenario, the Eleventh Circuit requires courts to apply a three-part "pain standard" requiring "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In evaluating the third prong, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citation omitted). The ALJ must "articulate explicit and adequate reasons" for rejecting a claimant's subjective testimony, but if the ALJ fails to articulate such reasons, then as a matter of law, the testimony must be accepted as true. *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988)).

### D. The SSA's Sequential Evaluation for Disability Claims

To be eligible for disability insurance benefits ("DIB"), a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423. A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

To determine a claimant's eligibility for DIB, the ALJ employs a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). At the ***first step***, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any."). If so, a finding of "no disability" is made. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must proceed to the ***second step*** and determine whether the claimant suffers from a "severe impairment." *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s)."). An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c) (stating that an impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities"). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.* ("If you do not have any impairment or combination of impairments . . . , we will find that you . . . are [] not disabled. . . . However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.").

The ***third step*** requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

meets the duration requirement, we will find that you are disabled."). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

If a claimant's impairment does not meet or equal those listed in Appendix 1 of the Regulations, the ALJ must proceed to ***step four***. *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record[.]"). Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. *See id.* The Regulations define RFC as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 404.1545(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. *See* 20 C.F.R. § 404.1520(f) ("If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work."). If so, the claimant is found not disabled. *See* 20 C.F.R. § 404.1520(f) ("If you can still [perform past relevant] work, we will find that you are not disabled.").

If the claimant establishes an inability to return to past relevant work, the inquiry turns to ***step five***. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). "At step five the burden of going forward

shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.*

## III. THE ALJ'S DECISION

On July 11, 2024, ALJ Rebecca Wolfe ("the ALJ") entered an unfavorable decision, finding Plaintiff "not disabled" under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *See* ECF No. [7-2] at 31.[3] In reaching this conclusion, the ALJ employed the SSA's five-step sequential evaluation outlined above.

At ***step one***, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the March 26, 2020 application date.[4] *See id*. at 18. She notes that while Plaintiff worked after the alleged disability onset date, this "did not rise to the level of substantial gainful activity" because she earned less than the amounts for substantial gainful activity in the years 2020 through 2023. *See id*. at 18. At ***step two***, the ALJ found Plaintiff had the "severe impairments" of fibromyalgia, connective tissue disease, osteoarthritis of bilateral knees, diabetes mellitus, hypertension, depression, and obesity, which "significantly limit the ability to perform basic work activities as required by SSR 85-28." *See id*. at 19. She also found Plaintiff's COVID, rosacea, and thyroid disorder not severe and that they failed to have more than a minimal effect on Plaintiff's ability to perform basic work activities. *See id*. The ALJ noted that she considered all

[3] The page numbers indicate the blue CM/ECF page numbers noted at the top of each document filed on the docket.
[4] The ALJ found that Plaintiff met the Social Security Act's insured status requirements through December 21, 2026. *See id*. at 18.

of Plaintiff's medically determinable impairments – both severe and not severe – during her assessment of Plaintiff's RFC. *See id.*

At ***step three***, the ALJ concluded that Plaintiff's impairments failed to meet the criteria listed in Appendix 1 to Subpart P of Part 404 of the Regulations. *See id.* The ALJ found that Plaintiff's mental impairments alone and in combination fail to meet or medically equal the requirements of listing 12.04. *See id.* The ALJ considered whether "paragraph B" criteria were satisfied, and ultimately found that they were not because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation." *See id.* at 19-20. Specifically, the ALJ concluded that Plaintiff has mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. *See id.* at 20. She also found Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace. *See id.* The ALJ also considered whether Plaintiff satisfies the "paragraph C" criteria and found that she does not. *See id.* Before moving on to step four, the ALJ noted that her RFC assessment "reflects the degree of limitation [she has] found in the 'paragraph B' mental function analysis." *See id.* Because Plaintiff's impairments did not meet or equal any of the Listings in Appendix 1 of the Regulations, the ALJ proceeded to step four of the five-step analysis.

At ***step four***, the ALJ concluded that Plaintiff has the RFC to perform light work with the exceptions that Plaintiff (1) requires a "sit/stand option at will with no time off task;" (2) can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; (3) never kneel or crawl, but can occasionally stoop or crouch; (4) frequently balance, reach above shoulder height with both arms, handle and finger with both hands; (5) should not be exposed to hazards such as unprotected heights and hazardous machinery; and (6) should not be exposed to vibrations. *See id.* at 21. The ALJ also included in the RFC that Plaintiff "can maintain concentration for at least

2 hours at a time and would be on task 90% of an 8-hour day." *See id*. In reaching these conclusions, the ALJ considered all of Plaintiff's symptoms to the extent they could "reasonably be accepted as consistent with the objective medical evidence and other evidence;" medical opinions; and prior administrative medical findings based on the statutory and regulatory requirements. *See id*.

The ALJ first found that medical evidence failed to support the severity of Plaintiff's impairments to the degree alleged. *See id*. at 22. To come to this conclusion, the ALJ considered the entire record. First, the ALJ addressed Plaintiff's testimony from the Hearing, *see id*. at 21, and compared it to the objective medical evidence, including Plaintiff's treatment records from Wilfredo Benetiz, M.D., Amnerys Garcia, M.D., Karen Fernandez Espinal, M.D.; and Mayte Ruiz Santiago, M.D., and consultative medical examinations from Hector Meruelo, M.D., and Alejandro Arias, Psy.D. *See id*. at 21-16. Based on the ALJ's review of the foregoing evidence, she determined Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but Plaintiff's statements regarding the "intensity, persistence and limiting effects" of those symptoms are "not entirely consistent with the medical evidence and other evidence in the record." *See id*. at 26. This is because, according to the ALJ, the "evidence contained in the record does not support the claimant's allegations of incapacitating symptoms that would prevent [her] from working." *Id*.

To support this finding, the ALJ explained that the objective findings indicated Plaintiff had "pain all over due to fibromyalgia;" degenerative changes in her thoracic spine, "atherosclerotic disease of the thoracic aorta;" "bilateral thyroid nodules;" osteopenia, though no evidence of displaced fracture or dislocation; no fracture or dislocation in the knees and hips; "multilevel spondylosis and degenerative disc disease;" "multilevel narrowing of the disc spaces

with endplate osteophytes" of the lumbar spine; and the "pedicles were intact." *Id*. at 26. The ALJ then pointed to the results from the examinations with Drs. Merulo, Garcia, Arias, and Ruiz, which the Court summarizes below.

Starting with the May 31, 2022 examination by consultative examiner Dr. Meruelo, the ALJ pointed out that, during that consultation, Plaintiff's ambulation was "unremarkable but ponderous;" she did not use a device to help her walk; she had a "full range of motion of the low back to 90 degrees" and could get on and off the examination table without assistance; experienced mild difficulty attempting to "tandem walk and to walk on heels and toes;" and her dexterity was normal. *Id.* He also noted that Plaintiff's mental status examination was "unremarkable," but he did not have her psychiatric history to review. *See id*. He indicated that Plaintiff had rosacea and while she reported cutaneous lupus, he did not see any physical symptoms of this condition and further noted that Plaintiff's rheumatologist indicated her bloodwork was negative for systemic lupus. *See id*. Dr. Meruelo took Plaintiff's blood pressure via the "palpatory method" because she was afraid of the pain. *See id*. He found that her joints were normal, had a normal range of motion, and her straight leg test was negative bilaterally. *See id*. at 27. She had no motor or sensory deficits. *See id*. He further explained that an x-ray of the lumbosacral spine was "remarkable for minimal anterior bulging and lipping at L3-4;" a chest x-ray showed "good inspiration and some right-sided predominance of the cardiac silhouette with some reinforcement of bronchial markings but no congestive heart failure."[5] *Id*.

The ALJ next pointed to the findings from Plaintiff's June 25, 2022 consultative examination with Dr. Arias. *See id*. at 27. During the examination, Plaintiff was motivated and cooperated; had good eye contact; indicated a depressed mood and cried throughout much of the

[5] Dr. Meruelo's clinical impression was "morbid obesity, fibromyalgia, depression, diabetes, pain in the knees and low back secondary to morbid obesity, hypertension and rosacea." *Id*. at 23.

visit; denied thoughts of suicide or homicide; denied experiencing hallucinations; was "fully oriented as to person, place and time;" was able to recite "four number[s] forward and three backward;" could recall "three out of three words upon immediate recall and after 5 minutes she recalled two out of three words;" drove herself to the appointment; had intact remote memory; could complete "serial subtractions of 7 from 100 without difficulty;" and her fund of information was "intact" given that she could name several large American cities, the governor of Florida, and the capital of France. *See id*. Her judgment was also found to be intact.[6]

Next, the ALJ considered the findings within the medical records from Dr. Garcia dated October 4, 2022 to November 10, 2022 in which she was evaluated for memory loss. *See id*. at 27. Dr. Garcia's examination revealed that Plaintiff's memory, attention span, and concentration were "intact;" and her physical and neurological examination findings were unremarkable. *See id*. Dr. Garcia ordered an MRI, which indicated Plaintiff's brain was "unremarkable," and an EEG which "showed no epileptiform activity and was normal." *Id*. She diagnosed Plaintiff with memory loss "likely secondary to major depression and history of fibromyalgia and lupus." *Id*.

Finally, the ALJ compared the findings from Plaintiff's psychiatric treatment with Dr. Ruiz. *See id*. Dr. Ruiz's psychiatric records indicated that Plaintiff did not fully comply with her medication regimen. *See id*. The ALJ noted that, despite Plaintiff's noncompliance, her mental status examinations displayed "full orientation, the ability to abstract and do arithmetic calculations, intact cognitive functioning, intact memory, intact associations, no signs of psychosis" and an above average estimated IQ range. *See id*. Plaintiff also reported feeling better with decreased pain when taking her medications and was able to travel internationally to visit her family. *See id*.

---

[6] Dr. Arias's diagnostic impression was "unspecified major depressive disorder." *Id*. at 26.

The ALJ also explained that the RFC is "only slightly more restrictive" in light of the objective medical evidence and Plaintiff's testimony about her subjective symptoms. *See id*. The ALJ ultimately concluded that "in view of the medical evidence of record, during the period at issue, and other factors discussed in this decision, the record does not support a finding of disability." *Id*.

Finally, the ALJ considered the medical opinion evidence and prior State Agency administrative findings, explaining that she cannot give any specific evidentiary weight to any prior administrative medical findings or opinions. *See id*. First, the ALJ noted that the examiners at the initial consideration level opined that Plaintiff could engage in light exertional activities, occasionally climb scaffolds, ladders, ropes, and stoop, but that she could frequently engage in "all other postural activities." *See id*. at 28. The ALJ noted the prior administrative medical findings on reconsideration were the same, with the additions that Plaintiff could frequently climb stairs and ramps, stoop, crouch, crawl, and kneel, and that she should avoid "concentrated exposure to vibrations and hazards." *See id*. The ALJ found the prior State Agency administrative findings to be "generally persuasive" and supported by the record as the evidence shows Plaintiff's fibromyalgia diagnosis and complaints of "diffuse pain all over her body." *See id*. at 28 (citing to exhibits 1A, 4A, 5A 8A, and 25F/10 in the administrative record). The ALJ also pointed to radiographic evidence in the record summarized above as well as Plaintiff's body mass index of 30, all of which, according to the ALJ, "support a light RFC." *Id.* She explained that, based on Plaintiff's testimony in which she complained of problems with reaching, hand pain, and swelling, the ALJ added "manipulative limitations" to the RFC. *Id*.

The ALJ next found Dr. Ruiz's medical opinion to be unpersuasive. *See id*. at 28. The ALJ first explained that Dr. Ruiz completed a medical assessment of Plaintiff's ability to perform work-

related mental activities. *See id*. Dr. Ruiz opined that Plaintiff had fair ability in "understanding, remembering, and carrying out simple job instructions, following work rules, using judgment, functioning independently, maintaining her personal appearance, demonstrating reliability, and in other areas that are unfortunately illegible." *Id*.[7] The ALJ explained that Dr. Ruiz found Plaintiff has a poor ability[8] in "dealing with the public, interacting with supervisors, dealing with work stress, maintaining attention and concentration, understanding, remembering, and carrying out complex and detailed job instructions, behaving in an emotionally stable manner and relating predictably in social situations." *Id*. The ALJ explained that she found Dr. Ruiz's opinion unpersuasive because "it is largely illegible." *Id*. She further explains that Dr. Ruiz's psychiatric records indicate Plaintiff went for weeks without taking her medications and despite this, Plaintiff demonstrated "full orientation, the ability to abstract and do arithmetic calculations, intact cognitive functioning, intact memory, intact associations, no signs of psychosis" and an above average estimated IQ range. *Id*. The ALJ noted that the mental status examinations also showed that when Plaintiff complied with her medication regimen, she reported feeling better with decreased pain. *See id*.

Turning to the medical opinions of Dr. Espinal, the ALJ likewise determined her opinion was unpersuasive. *See id*. at 28. The ALJ explained that Dr. Espinal completed a medical statement on March 21, 2024, noting that Plaintiff could work four hours of an eight-hour workday, could not stand at one time but could do so for a total of one hour and could sit for thirty minutes at a time for a total of four hours in an eight-hour workday. *See id*. at 28-29. Dr. Espinal opined that Plaintiff could not lift weight and could "occasionally bend, never stoop, [and] occasionally raise her bilateral arms overhead." *Id*. at 29. The ALJ explained that this opinion is not persuasive

[7] Fair ability means the "ability to function is limited but satisfactory." ECF No. [7-2] at 28.
[8] Poor ability means "the ability to function is seriously limited but not precluded." *Id*.

because Dr. Espinal's treatment notes indicate that Plaintiff's functioning was intact. *See id.* (contrasting Exhibit 23F with Exhibit 21F).

Finally, the ALJ explained that while Drs. Meruelo and Arias did not characterize functional limitations in "vocational terms," their clinical findings were "persuasive" and she accounted for their findings in the decision "to the extent consistent with the overall record." *Id.*[9]

Because Plaintiff lacked the RFC to perform past relevant work, the ALJ proceeded to ***step five*** of the SSA's five-step sequential analysis. *See id.* at 29-30. At this analytical step, the ALJ noted that while Medical-Vocational Rules 202.18 and 202.11 would have directed her to find Plaintiff "not disabled," Plaintiff's ability to perform all or substantially all the requirements of this work level is hindered by additional limitations. *See id.* As a result, the ALJ posed a hypothetical to a vocational expert ("VE") during the hearing to determine to what degree Plaintiff's limitations "erode the unskilled light occupational base." *See id.* The VE testified that, given all the relevant factors, Plaintiff could perform work as a (1) "Cashier 2;" (2) "Survey Worker;" or (3) "Order Caller." *See id.* Based on the VE's testimony and after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was not disabled because she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.*

## IV. DISCUSSION

On appeal, Plaintiff's Motion for Summary Judgment sets forth two main contentions. First, she asserts that the ALJ failed to adequately address supportability and consistency under 20 C.F.R. § 404.1520c and selectively adopted portions of medical opinions without "reconciling

[9] The Court notes that in this portion of the ALJ's Decision, she references Drs. Meruelo and Arias by their examination reports in the record at Exhibit 8F and 9F respectively, not by name. *See id.* at 29; *see also* ECF No. [7-7] at 166-76; 177-80.

omitted limitations or conflicts." *See* ECF No. [10] at 6. In support of this argument, Plaintiff asserts that although the ALJ adopted the State Agency opinions as "generally persuasive" and the psychological opinions as "somewhat persuasive," she failed to reconcile "significant" work limitations. *See id*. at 7. According to Plaintiff, the ALJ imposed stricter limitations than the State Agency consultative examiners and did not explain why, warranting remand. *See id*. at 7-10. Plaintiff also asserts that the record does not support the ALJ's finding that Drs. Espinal and Ruiz's opinions are "not persuasive," directing the Court to sections of the record the ALJ allegedly did not consider, despite their consistency with the findings of Dr. Meruelo, whose opinion the ALJ deemed persuasive. *See id*. Plaintiff argues that the ALJ improperly dismissed Dr. Ruiz's treatment notes as "illegible" when determining Dr. Ruiz's opinion was "not persuasive." *See id*. at 12-13.

As her second issue on appeal, Plaintiff argues that substantial evidence does not support the RFC finding because it fails to incorporate all of Plaintiff's limitations and is instead based on the ALJ's "flawed" analysis of the medical record and Plaintiff's subjective statements. *See id*. Specifically, Plaintiff states that the ALJ failed to account for limitations stemming from her impairments and had she done so, the evidence would have led the ALJ to conclude that Plaintiff is "incapable of engaging in any full-time, competitive capacity on a sustained basis." *See id*. at 15. In making this assertion, Plaintiff argues that the ALJ focused on the normal findings while disregarding the abnormal ones to support her adverse finding. *See id*. at 15-16. Plaintiff further asserts that the ALJ failed to account for her pain limitations in the RFC and additional limitations such as concentration, persistence, maintaining pace, and social limitations. *See id*. at 16-18. Finally, Plaintiff asserts that substantial evidence does not support the ALJ's findings regarding

Plaintiff's noncompliance with medication because the ALJ failed to consider that Plaintiff's failure to follow treatment may be a symptom of her depression. *See id*. at 20.

In Defendant's Motion for Summary Judgment, it asserts that the ALJ properly applied the regulations to her assessment of RFC. *See* ECF No. [14] at 12. Defendant explains that, although the ALJ found the State Agency medical administrative findings to be persuasive, Plaintiff had "slightly greater limitations." *See id*. at 12. The ALJ also explained that Drs. Espinal and Ruiz's opinions were not persuasive because they were inconsistent with and thus unsupported by the record. *See id*. at 12. Defendant argues that the ALJ properly assessed the intensity and persistence of Plaintiff's symptoms, finding her subjective allegations inconsistent with her medical examinations, daily activities, and prior administrative medical findings. *See id*. at 5.

The Reply largely reiterates the positions in Plaintiff's Motion for Summary Judgment. *See generally* ECF No. [15]. Plaintiff further contends that Defendant failed to address "the ALJ's requirement to consider stress in the RFC," Plaintiff's argument that the ALJ made findings regarding Plaintiff's concentration without any medical evidence, and Plaintiff's "need for social limitations." *See id*. at 7-8. By failing to address these arguments, Plaintiff asserts that Defendant has waived them. *See id*.

As explained below, the Court concludes that the ALJ properly assessed the reliability of the State Agency, treating, and consultative medical opinions from a supportability and consistency standpoint, but that substantial evidence does not support the RFC, requiring remand.

**A. The ALJ Adequately Weighed and Evaluated the Medical Opinion Evidence**

To recap, when evaluating the persuasiveness of medical opinions, an ALJ is only required to address the two "most important" factors — supportability and consistency — and must articulate how those factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(2); *Matos*

*v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020). Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" — the "more relevant" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(1). Objective medical evidence is "medical signs, laboratory findings, or both[.]" *Id.* §§ 404.1513(a)(1), 404.1502(f). And consistency refers to how consistent "a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim" — the "more consistent" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(2).

The Court must also analyze whether substantial evidence supports the ALJ's decision. In applying the deferential standard of review, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence — "more than a scintilla, but less than a preponderance" that a reasonable person would accept as adequate — supports the decision. *See Biestek*, 587 U.S. at 104; *see Hale*, 831 F.2d at 1011; *Dyer*, 395 F.3d at 1210. The Court may not reweigh the evidence or substitute its judgment for the ALJ's. *See Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239.

The Court will first determine whether the ALJ properly evaluated each medical opinion under the required supportability and consistency factors, and then whether substantial evidence supports the ALJ's findings.

**a. The State Agency Medical Opinions**

Plaintiff's main contention is that the ALJ imposed more restrictive limitations than the State Agency medical opinions without reconciling work-related limitations. *See* ECF No. [10] at 7-8. She asserts that the ALJ found the State Agency opinions "generally persuasive" but deviated from their findings, "selectively and inconsistently" crediting State Agency opinions by cherry-picking portions of the opinions that supported her RFC finding without explaining why. *See id.* at 9-10. Specifically, Plaintiff points to the ALJ's RFC limitation incorporating (1) more physical restrictions and (2) maintaining concentration for at least two hours at a time and being on-task for approximately 90% of an eight-hour workday. *See id.* at 7, 10. Plaintiff argues that the ALJ should have relied on a supported medical opinion rather than assessing limitations herself, and that finding Plaintiff more limited than the State Agency consultants leaves the RFC unsupported. *See id.* Plaintiff finally asserts that the ALJ could not find Plaintiff capable of sedentary work without also finding her disabled according to the Medical-Vocational Guidelines 201.14.

Contrastingly, Defendant asserts that the ALJ properly considered the State Agency medical opinions and explained that while she found them persuasive, she imposed further limitations after considering Plaintiff's testimony. *See* ECF No. [14] at 13. Defendant argues that the ALJ was not required to adopt the State Agency medical findings "verbatim," even if she found them persuasive. *See id.* at 13. All the ALJ was required to do under the regulations was assess the persuasiveness of the medical opinions and explain how she considered the supportability and consistency factors. *See id.* at 13. Defendant argues that the ALJ need not address every single limitation identified by a medical source and that the regulations do not indicate a "persuasive" opinion or State Agency finding is controlling in an RFC determination. *See id.* at 13. Defendant adds that Plaintiff's remand argument based on the ALJ's assessment of greater limitations "defies

logic" as the ALJ properly considered Plaintiff's subjective complaints and gave her the "benefit of the doubt by assessing her with greater restrictions than the medical consultants found." *See id*. at 13.

In the Reply, Plaintiff reiterates that the ALJ did not discuss the supportability or consistency of the State Agency psychological consultant's opinions, and that mere acknowledgement does not satisfy the ALJ's burden under the regulations. *See* ECF No. [15] at 1. Although the ALJ found Plaintiff more limited than the State Agency consultants, the ALJ failed to provide any reasoning for this conclusion, making the RFC unsupported. *See id*. at 2. While Plaintiff's argument in her Motion for Summary Judgment and Reply is not the gold standard of clarity, she seems to challenge only the consistency factor and whether substantial evidence supports the ALJ's decision in finding the State Agency medical opinions are "generally persuasive."

The Court therefore begins its analysis with the consistency factor and in doing so, the Court keeps in mind the following principles: The ALJ "is not required to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review." *See Gray*, 2025 WL 25956, at *6 (citation omitted); *see Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole" (cleaned up)); 20 C.F.R. § 404.1520c(b)(1) ("Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."). And "[w]hile one could

credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court." *Gray*, 2025 WL 25956, at *7. Rather, the "Court's job is . . . to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant." *Id.*

Looking at the ALJ's Decision, the ALJ compared the State Agency's findings against other objective evidence, including treatment records, to reach her conclusion and explained that those findings are "generally persuasive," pointing to the portions of the record supporting them. *See* ECF No. [7-2] at 28. For example, the ALJ noted that the State Agency findings at the "initial level" opined that Plaintiff could engage in light exertion, stoop, and climb ladders, ropes, scaffolds occasionally, but could "frequently" engage in all other postural activities. *See id*. The ALJ discussed that on reconsideration, the State Agency consultants had the same findings, with the additions that Plaintiff could frequently climb stairs and ramps, stoop, crouch, crawl, and kneel, and that she should avoid "concentrated exposure to vibrations and hazards." *See id*. The ALJ noted the record supports these findings based on Plaintiff's fibromyalgia diagnosis and complaints of "diffuse pain all over her body," *see id*. at 28 (citing Exhibits 1A, 4A, 5A, 8A, and 25F/10 in the administrative record), as well as x-rays and radiographs showing "degenerative changes of the thoracic spine and atherosclerotic disease of the thoracic aorta;" "bilateral thyroid nodules;" right shoulder "osteopenia but no evidence of displaced fracture or dislocation;" no fractures in both knees; and "multilevel spondylosis and degenerative disc disease" in the thoracic spine. *Id.* at 26 (citing Exhibits 2F, 25F/10, 19, 23, 27, 29, 31). As such, the ALJ appropriately found the State Agency opinions consistent with the record. *See* 20 C.F.R. § 404.1520c(c)(2).

Next, the ALJ explained that the objective evidence along with the prior administrative medical findings, Plaintiff's BMI, and Plaintiff's subjective pain complaints support a light RFC

determination, but the ALJ included "manipulative limitations" based on Plaintiff's testimony regarding problems with reaching, hand pain, and swelling. *Id*. at 28. In this way, the ALJ credited Plaintiff's subjective complaints in rendering her RFC determination. *See* 20 C.F.R. § 416.920c(c)(2); *see also* § 416.929(c)(3) (factors considered when determining how symptoms limit capacity for work). As such, the Court rejects Plaintiff's argument that the ALJ "provided no explanation" for the deviations from the State Agency findings. *See* ECF No. [10] at 7.

For these reasons, substantial evidence supports the ALJ's decision regarding the persuasiveness of the State agency consultant's findings and the additional RFC limitations that "[Plaintiff] requires a sit/stand option at will with no time off task;" she can "never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs," "never kneel or crawl and occasionally stoop and crouch," "frequently balance" and "reach above shoulder height with both arms" as well as "handle and finger with both hands," should not "have exposure to hazards such as hazardous machinery and unprotected heights," and "should not be exposed to vibrations." *See* ECF No. [7-2] at 21.

With that said, the Court is unable to ascertain how the ALJ reached the conclusion in the RFC limitation that Plaintiff can maintain concentration for at least two hours at a time and stay on-task for approximately 90% of an eight-hour workday. While Plaintiff argues that the ALJ credited one portion of the State Agency consultants and discredited another without explanation, the Court finds that the ALJ did not discuss this at all. As will be explained below, the ALJ provides no rationale for this additional limitation.

**b. The ALJ Properly Considered and Found Drs. Espinal and Ruiz's Opinions Unsupported**

i. Dr. Espinal

Plaintiff next argues that the ALJ did not analyze Dr. Espinal's findings that she had: a "history of widespread pain for three or more months, pain in 11 or more pressure points, stiffness, paresthesia, sensation of swollen hands, sleep disturbance, chronic fatigue, and an inability to ambulate effectively, e.g., inability to walk a block at a reasonable pace on rough or uneven surface, inability to walk enough to shop or bank, and inability to climb a few steps at a reasonable pace with the use of a single handrail," which physical exams support. *See* ECF No. [10] at 11. According to Plaintiff, Dr. Meruelo's consultative examination findings, which the ALJ deemed persuasive, corroborate Dr. Espinal's physical findings, and although the ALJ stated she accounted for Dr. Meruelo's findings "to the extent they are consistent with the overall record," she did not explain how those findings are "accommodated" in the RFC. *See id*. at 11. Plaintiff argues that the ALJ highlighted normal findings while disregarding abnormal ones, which is insufficient "for not finding Dr. Espinal's medical opinion more persuasive," warranting remand. *See id*. at 11-12. She also asserts that the ALJ's summary of certain portions of the medical records is insufficient to explain how she considered the supportability and consistency factors. *See id*. at 12.

Defendant, in turn, asserts that the ALJ properly applied the supportability and consistency factors in finding that Dr. Espinal's opinion was not supported by and was inconsistent with the doctor's treatment records. *See* ECF No. [14] at 14. Defendant argues that the ALJ explained that in Dr. Espinal's March 2024 opinion, she indicated Plaintiff could work four out of the eight hours in a workday, could not stand or lift weight, and had other "extreme limitations." *See id*. at 14. According to Defendant, the ALJ properly explained that these extreme findings were unsupported and inconsistent with Dr. Espinal's treatment records, which revealed "intact functioning." *See id*.

Dr. Espinal also documented "relatively normal findings including that Plaintiff was in no acute distress with a normal gait, no spinal tenderness, and normal range of motion in her shoulders and hips." *See id*. Defendant argues that this shows the ALJ properly considered Dr. Espinal's opinion and it was reasonable to find it unpersuasive. *See id*. at 14.

In the Reply, Plaintiff reiterates that there is no support for the ALJ's finding that Drs. Espinal and Ruiz's opinions are "unpersuasive." *See* ECF No. [10] at 11. She argues that the ALJ failed to consider physical examinations showing adverse medical findings and that the ALJ failed to mention Dr. Espinal's findings regarding pain, fatigue, and several other adverse symptoms. *See id*. at 2-3. The ALJ selectively cited normal examination notes and ignored the evidence of impairment, rendering her RFC assessment unsupported. *See id*. at 3.

The Court finds Plaintiff's arguments unpersuasive. First, while the regulations require the ALJ to address consistency and supportability and articulate how they are considered in the analysis, an ALJ is not required to use "magic words." *See* 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(2); *Minnis v. Comm'r of Soc. Sec.*, No. 24-11281, 2025 WL 974570, *6 (11th Cir. Apr. 1, 2025) ("But 'there are no magic words' the ALJ must use when stating with particularity the weight given to medical opinions, and our review focuses on 'whether the ALJ state[s] with at least some measure of clarity the grounds for his [or her] decision.'") (citing *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024) (alteration in original)). The ALJ did just that here. She first summarized the objective medical evidence of record, including records from Dr. Espinal. *See* ECF No. [7-2] at 22-23, 25 (citing Exhibits 7F, 23F, 21F). The ALJ then explained that Dr. Espinal's opinion is "not persuasive" because her medical statement regarding fibromyalgia indicated that Plaintiff could only work four out of eight hours in a workday; only stand for 60-minutes in the workday and only sit for 30-minutes at a time and for four hours in an 8-hour

workday; could not lift any weight, and could occasionally bend and raise her arms overhead bilaterally; and never stoop. *See* ECF No. [7-2] at 29. In contrast, the ALJ pointed out that Dr. Espinal's treatment notes showed that Plaintiff's functioning was intact. *Id.* While the ALJ certainly did not use many words here, it is clear to the Court that the ALJ rejected Dr. Espinal's medical statement because it contradicted her treatment notes showing that Plaintiff's functioning was intact, rendering the opinion unsupported. *See id.* As support for her conclusion, the ALJ cites to Dr. Espinal's treatment notes documenting normal range of motion in the shoulders and hips, normal gait, lack of spinal tenderness, lack of synovitis in the hands and feet, and complaints of knee pain for which she received a Gelsyn injection and had a fair response, all of which the ALJ summarized in her decision. *Id.* at 25.

Further, the Court considers the ALJ's opinion as a whole and in view of the ALJ's discussion of the other medical evidence and opinions, and in doing so, it finds that Dr. Espinal's limitations are inconsistent with the record evidence. *See e.g.*, ECF No. [7-2] at 23 (summarizing Dr. Meruelo's consultative examination results where Plaintiff had, *inter alia*, "unremarkable but ponderous" ambulation and did not use "any assistive device;" "had full range of motion of the low back to 90 degrees;" "could get on and off the exam table by herself;" "had mild difficulty trying to tandem walk and to walk on heels and toes."); *id.* at 28 (citing State Agency administrative findings indicating Plaintiff could, *inter alia*, engage in "light exertion" and "occasionally" climb ladders, ropes, scaffolds; "frequently" climb ramps and stairs, and frequently engage in all other postural activities). In making the argument that Dr. Meruelo's clinical findings corroborate Dr. Espinal's opinion and that the ALJ highlighted normal but ignored abnormal findings, Plaintiff asks the Court to reweigh the evidence. *See* ECF No. [14] at 11. That is not the

role of the Court here. Indeed, the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (citation omitted).

i. **Dr. Ruiz**

Next, Plaintiff argues that the ALJ's determination that Dr. Ruiz's notes were largely illegible and thus her opinions were not persuasive is insufficient and warrants remand for clarification and support since this information is important evidentiary material. *See* ECF No. [10] at 12. She asserts a reviewing court has "no way to determine whether the ALJ fully understood the medical evidence" when an ALJ makes an illegibility finding. *See id*. at 12. Plaintiff argues the Court cannot provide meaningful review of the ALJ's decision because Plaintiff's doctor has illegible treatment notes. *See id*. Further, Plaintiff asserts the ALJ's findings are unsupported because Dr. Ruiz's opinion identifies, *inter alia*, that Plaintiff has a poor ability to maintain attention/concentration and deal with the public and stress, and Dr. Ruiz's examinations demonstrating abnormalities, along with Plaintiff's testimony at the Hearing, support that opinion. *See id*. at 13.

Defendant argues that the ALJ properly considered Dr. Ruiz's opinion and explained that it was not persuasive because it was unsupported by and inconsistent with her treatment records. *See id*. at 14. Dr. Ruiz's January 2024 opinion found that Plaintiff had several mental restrictions (i.e. only perform simple work and poor social and behavioral abilities and concentration). *See id*. at 15. Defendant further states the ALJ did not exclusively rely on the illegibility findings and indeed pointed to Dr. Ruiz's treatment notes to explain that the examination results did not support her findings. *See id*. at 15. Further, Defendant asserts that the ALJ pointed to mental status examinations demonstrating Plaintiff consistently showed "full orientation, ability to abstract and do arithmetic, intact cognitive functioning, intact memory, intact associations, and no signs of

psychosis," thereby properly considering Dr. Ruiz's opinion and deeming it unpersuasive. *See id*. In the Reply, Plaintiff reiterates that the ALJ noted normal findings without considering abnormal findings in determining that Dr. Ruiz's opinion was unpersuasive. *See* ECF No. [10] at 4.

The Court finds that the ALJ considered the entire record and substantial evidence supports her finding that Dr. Ruiz's opinion is "not persuasive." *See id*. Plaintiff makes much of the fact that part of the ALJ's reasoning for this finding was that Dr. Ruiz's opinion was "largely illegible." *See* ECF No. [7-2] at 28; ECF No. [14] at 12. While Plaintiff cites to *Marin v. Comm'r of Soc. Sec.*, No. 20-CV-1392-DCI, 2021 WL 8946147 (M.D. Fla. Nov. 2, 2021) for support, that case is distinguishable. As discussed below, the ALJ does not find Dr. Ruiz's opinion "not persuasive" solely because it is "largely illegible;" further, the Court's review of the record reveals that the ALJ was able to summarize the limitations noted within the medical evaluation except for some limited handwritten notations in that document and the ALJ was able to compare that to a complete set of medical records from Dr. Ruiz containing all of her treatment notes. *See* ECF No. [7-2] at 28; ECF No. [7-8] at 280-281; ECF No. [7-9] at 22-61. Indeed, the ALJ explains that despite Plaintiff's noncompliance with her medication, the mental status exams show "showed full orientation, the ability to abstract and do arithmetic calculations, intact cognitive functioning, intact memory, intact associations, no signs of psychosis, and her IQ was estimated to be in the above average range." *See* ECF No. [7-2] at 26, 28. Moreover, the ALJ notes in the Decision the particular abnormalities that Plaintiff highlights in her Motion for Summary Judgment. *See id*. at 25. This demonstrates that the ALJ considered such abnormal findings while determining the RFC.

Further, Plaintiff points to her testimony as support for Dr. Ruiz's medical findings and her argument that the "totality of the evidence is consistent with" restrictions Drs. Espinal and Ruiz assessed. *See* ECF No. [10] at 13. In doing so, Plaintiff once again points to other portions of the

record she argues support Dr. Ruiz's opinion and impermissibly asks the Court to reweigh the evidence. *See id*. at 15-16. The Court declines to do so as it would be contrary to its role on appeal. *See Winschel*, 631 F.3d at 1178.

**B. Substantial Evidence Does Not Support The RFC Finding**

Turning to the second issue on appeal, Plaintiff asserts that the RFC finding fails to account for all limitations imposed by her impairments, warranting remand. *See id*. She argues that if the ALJ complied with the regulations, the evidence would have shown that she is more limited than the ALJ found, and "incapable of engaging in any full-time, competitive capacity on a sustained basis." *See id*. at 15. The root of Plaintiff's argument is that the ALJ assessed the ways in which Plaintiff could conduct her daily living activities without factoring in additional limitations such as subjective complaints of tingling in her hands, a tendency to fall, and forgetfulness. *See id*. at 15. Plaintiff asserts that various diagnoses in the medical record support her subjective statements, so the ALJ cherry-picked evidence to support the finding that Plaintiff is not disabled. *See id*. at 15-16. According to Plaintiff, her limited ability to care for herself does not preclude a disability finding. *See id*. She points specifically to the limitations of (1) inability to handle stress; (2) concentration, persistence, ability to maintain pace, and (3) social limitations. *See id*. at 17-19. Plaintiff argues the RFC does not address specific evidence of "impaired stress tolerance" making it unsupported by substantial evidence. *See id*. at 17.

Further, Plaintiff asserts the ALJ imposed a concentration limitation in the RFC without an analysis or any medical support; the ALJ failed to explain her reliance on certain findings but not others, thus undermining her findings; substantial evidence does not support the ALJ's RFC determination; and the limitations provided to the VE expert were inappropriate, leaving the VE testimony unsupported. *See id*. at 18. Through this, the ALJ engaged in "selective and largely unsupported" interpretation of evidence and "failed to properly credit the opinions of Plaintiff's

treating and examining physicians." *See id*. at 19. Plaintiff finally asserts that the RFC analysis omits any social limitations despite finding that Plaintiff has mild limitations in interacting with others. *See id*. at 19.

Contrastingly, Defendant argues that the ALJ properly assessed the intensity and persistence of Plaintiff's symptoms, finding her subjective allegations inconsistent with her medical examinations, daily activities, and prior administrative medical findings. *See* ECF No. [14] at 5. Defendant states the ALJ discussed the objective medical evidence thoroughly and substantial evidence supports her finding that Plaintiff has a greater capacity than she alleges. *See id*. at 6. To support this contention, Defendant cites the various sections of the Decision where the ALJ considered the objective evidence from Drs. Meruelo, Arias, and Ruiz. *See id*. at 6-7. Defendant argues that these "relatively normal objective findings" are sufficient to support the ALJ's assessment of Plaintiff's subjective complaints and RFC finding. *See id*. at 7. Defendant asserts that the ALJ further supported her assessment by pointing to evidence of Plaintiff's daily activities and her self-reported independence to Drs. Arias and Garcia, concluding that these activities were inconsistent with Plaintiff's allegations of disability. *See id*. at 8. Defendant notes that the ALJ discussed the prior State Agency medical findings, found them persuasive because they were consistent with the objective evidence, but then imposed greater limitations in the RFC to account for Plaintiff's testimony. *See id*. at 9. Defendant argues that Plaintiff misunderstood the ALJ's reliance on her activities of daily living and that the ALJ did not use these activities to preclude a disability finding. *See id*. at 9. Rather, the ALJ followed the regulations by using this evidence to evaluate Plaintiff's subjective complaints and found she had a greater capacity than alleged. *See id*. Finally, Defendant argues that most of Plaintiff's argument asks the Court to "play

ALJ" and reweigh the evidence to find further limitations than the ALJ found. *See id.* at 11. Defendant asks the Court to reject Plaintiff's invitation and instead affirm the ALJ's decision. *Id.*

Plaintiff largely reiterates her position in the Reply. *See* ECF No. [15] at 5. Plaintiff also argues that Defendant failed to address the ALJ's requirement to consider stress in the RFC analysis; the ALJ's failure to explain how she added an RFC limitation regarding concentration; and Plaintiff's need for social limitations. *See id.* at 8-9. By failing to respond to these arguments regarding the additional limitations, Plaintiff asserts that Defendant has waived them. *See id.* at 9.

As detailed above, a plaintiff may establish disability by testifying about his or her own pain or other subjective symptoms. *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (citation omitted). The Eleventh Circuit's three-part "pain standard" for evaluating whether the ALJ properly considered such testimony requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See Chatham*, 764 F. App'x at 868 (quoting *Wilson*, 284 F.3d at 1225); *see also* SSR 16-3p; 20 C.F.R. § 416.929. In evaluating the latter prong, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citation omitted). The ALJ must clearly articulate explicit and adequate reasons for discrediting Plaintiff's subjective complaints, and the trial court must affirm if substantial evidence — that is, "such relevant evidence as a reasonable mind might accept as adequate" — supports those reasons. *See Dyer*, 395 F.3d at 1210; *Winschel*, 631 F.3d at 1178; *Schink*, 935 F.3d at 1257. Stated differently, so long as substantial evidence supports the ALJ's decision and she clearly articulates the reasons for the credibility determination, then the ALJ did not err. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803,

807–08 (11th Cir. 2013). In making this determination, however, the Court cannot reweigh the record evidence. *See Burke v. Kijakazi*, No. 22-CV-389-LCB, 2023 WL 5103134, at *3 (N.D. Ala. Aug. 9, 2023).

To recap, Plaintiff alleged disability due to depression, allergies, type-2 diabetes, fibromyalgia, high blood pressure, lupus, and cholesterol. *See* ECF No. [7-4] at 58, [7-6] at 2, 6. The Court finds that the ALJ did not err when she assessed Plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms as "not entirely consistent" with the medical evidence and other evidence in the record. *See* ECF No. [7-2] at 26. She explained that the record evidence does not support Plaintiff's allegations of "incapacitating symptoms" that would preclude her from working. *See id*. In making this determination, the ALJ considered the record as a whole pointing to objective finding from radiographs, an ultrasound, and x-rays indicating that Plaintiff had, *inter alia*, "pain all over due to fibromyalgia;" "degenerative changes of the thoracic spine and atherosclerotic disease of the thoracic aorta;" "bilaterial thyroid nodules;" right shoulder "osteopenia but no evidence of displaced fracture or dislocation;" no fractures in both knees; and "multilevel spondylosis and degenerative disc disease" in the thoracic spine. *Id*. at 26. The ALJ also pointed to findings from Dr. Meruelo's consultative examination that indicated her "ambulation was unremarkable but ponderous" and that she did not use any device to assist with walking; had full range of motion to 90 degrees in her low back; could get up and down from the examination table herself; and had "mild difficulty" in attempting to tandem walk. *See id*. He noted that her joints were normal with the same range of motion; she did not have any motor or sensory defects; had normal manual dexterity; and had an "unremarkable mental status examination." *See id*. Dr. Meruelo noted Plaintiff's rosacea, did not find signs of cutaneous lupus, and explained that Plaintiff stated her bloodwork was negative for systemic lupus. *See id*.

The ALJ indicated that the consultative examination by Dr. Arias found Plaintiff to be "cooperative, motivated, and displayed good eye contact;" had a depressed mood and cried throughout the visit; denied suicidal and homicidal ideation; was "fully oriented as to person, place, and time;" indicated she drove herself to the appointment; and both her memory and knowledge were intact. *See id*. The ALJ explained Plaintiff's treatment with Dr. Garcia, which indicated that Plaintiff's memory, attention span, and concentration were all intact; her physical and neurological findings were "unremarkable;" and a brain MRI and EEG had no abnormal results. *See id*. The ALJ notes that Dr. Garcia diagnosed Plaintiff with memory loss "likely secondary of major depression and history of fibromyalgia and lupus." *Id*. Finally, the ALJ explained that the psychiatric records from Dr. Ruiz showed that Plaintiff was not always compliant in taking her medication but despite this, her mental status examinations showed "full orientation, the ability to abstract and do arithmetic calculations, intact cognitive functioning, intact memory, intact associations, no signs of psychosis," and an above-average estimated IQ range. *See* ECF No. [7-2] at 27.

Aside from the objective medical evidence, the ALJ considered Plaintiff's testimony regarding activities of daily living. *See id*. at 21-22. Contrary to Plaintiff's argument, the ALJ notes in detail the sections of the testimony Plaintiff argues she omitted from the Decision. For example, the ALJ notes that Plaintiff testified to not bathing in four days, her average pain is between 6 or 7 out of 10; the people she lives with clean the home; and she does not like to go out. *See id*. at 22. While the ALJ does not cut and paste every line of Plaintiff's testimony regarding her subjective complaints, she is not required to and Plaintiff points to no case law indicating that she must. Further, Plaintiff's argument that the ALJ does not account for these limitations in the RFC is incorrect. *See* ECF No. [10] at 16. She cites *Roxan J. v. Comm'r, Soc. Sec. Admin.*, No.

20-CV-159-JCF, 2022 WL 16706711, *5 (N.D. Ga. Mar. 4, 2022) to support her contention. But, unlike here, the plaintiff in *Roxan* pointed to function reports that evaluated Plaintiff's statements about her pain and its limiting effects. *See id*. at *5. The court reasoned that, without considering those reports containing Plaintiff's subjective statements about her symptoms, the ALJ "could not properly evaluate whether all of Plaintiff's statements about her symptoms were consistent with one another and the objective medical and other evidence of record, which the ALJ must do in order to determine whether Plaintiff's symptoms are more likely to reduce his or her capacities for work-related activities[.]'" *Id*. (quoting SSR 16-3p) (alteration in original). Plaintiff points to no such reports here and the Court will not sift through the over 1,200-page record to attempt to find them, if they in fact exist. *See Balthazar Mgmt., LLC v. Beale St. Blues Co., Inc.*, No. 17-CV-81214, 2019 WL 1958548, at *7 (S.D. Fla. Apr. 9, 2019) ("Likewise, district court judges are not required to ferret out delectable facts buried in a massive record." ) (quoting *Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)). Having clearly articulated the reasons for her credibility finding and relying on substantial evidence for that determination, the ALJ did not err in her finding that Plaintiff's testimony was not entirely consistent with the record.

The Court also rejects Plaintiff's contentions that the ALJ did not consider all limitations arising from all impairments. By pointing to those portions of the record that purportedly contradict the ALJ's findings, Plaintiff again impermissibly asks the Court to reweigh the evidence to conclude that the ALJ's finding was not supported. The Court declines to do so as it would be contrary to its role on appeal. *See Winschel*, 631 F.3d at 1178. Accordingly, the Court finds that the ALJ sufficiently considered the record as a whole when evaluating Plaintiff's daily activities. *See Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984) ("[W]e evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.").

The Court does agree, however, that the ALJ fails to explain how she determined the concentration limitation in the RFC – that is, that Plaintiff can maintain concentration for at least 2 hours at a time and would be on task for 90% of an 8-hour day. This RFC limitation seems to contradict those portions of the record indicating that Plaintiff's concentration is "intact." *See* ECF No. [7-2] at 24 (citing Exhibit 16F), 25 (citing Exhibit 24F/35-40), 27 (citing Exhibit 11F/2-3, 8-9). It is not evident from the Decision what evidentiary basis the ALJ relied on to support this finding. Indeed, the only opinion that characterizes Plaintiff's concentration as anything but normal or intact is Dr. Ruiz's opinion, and the ALJ found it "not persuasive." *See* ECF No. [7-2] at 28. Tellingly, Defendant is silent on this issue, failing to address it all in the Response. *See generally* ECF No. [14]. Because the Court cannot ascertain how the ALJ came to its conclusion regarding the additional limitation in the RFC accounting for concentration, it cannot properly carry out its role as the reviewer. And while the RFC determination is within the province of the ALJ, she must still provide a reason supported by substantial evidence. *See also Hale*, 831 F.2d at 1011 (finding that substantial evidence is "more than a scintilla, but less than a preponderance"); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.") (citation omitted).

Because this issue is dispositive, the Court finds that here is no need to address Plaintiff's remaining arguments on the second issue on appeal. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (finding that on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issues when case must be reversed due to other dispositive errors). Accordingly, the Court remands this matter to the ALJ for further proceedings.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, **ECF No. [10]**, is **GRANTED;** Defendant's Motion for Summary Judgment, **ECF No. [14]**, is **DENIED**, and the Administrative Law Judge's Decision is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk will enter judgment for Plaintiff and against the Commissioner by separate Order. The Clerk of Court is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers, in Miami, Florida, on September 29, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record